## SMITHS *v.* SHOEMAKER.

1. In an action of ejectment, a letter of the plaintiff's grantor, written to the ancestor of the defendant, is not competent evidence to show that the ancestor entered into possession under the license of the plaintiff's grantor, without some evidence that such letter was received or acted on about the time of such entry by the ancestor.
2. A general objection that such letter is a declaration of the grantor of his own rights was sufficient.
3. If, in the appellate court, the party introducing such a letter relies on any special circumstances as an exception to the rule (as that it was part of the *res gestæ*), that circumstance must appear in the bill of exceptions or by the record in some other manner. The admission will be held to be erroneous unless this appears.
4. There being no extrinsic evidence that the letter was ever received or acted on by the ancestor, the date found in the letter, though near the time of entry, is not sufficient evidence of that fact to justify its admission. The important fact being its receipt by the defendant's ancestor, at a particular time, cannot be established by the date found in the letter for the purpose of admitting the letter. The date would thus prove the letter, and the letter prove the date, without evidence that either was true.
5. When it is argued here that an error in the court below worked no injury to the party complaining, the fact that it worked no injury must be made to appear beyond question. If it is only to be seen by a mere preponderance of evidence, and the error is substantiated, the judgment must be reversed.

ERROR to the Supreme Court of the District of Columbia.

David Shoemaker brought ejectment, in December, 1868, against Caroline Smith, Mary Smith, *et al.*, for certain real

estate in Georgetown, D. C.   The property in question had
been conveyed, A.D. 1810, by persons owning it, to one
Beal, in trust for a certain Kilty Smith during life, and on
his death for his son John Chandler Smith.   After the date
of this deed, Kilty Smith had another son, to wit, Hamilton
Smith, the father of the defendants.   On the trial, the plain-
tiff, Shoemaker, having shown title in the above-named John
Chandler Smith, completed his title by showing a convey-
ance from the said John Chandler Smith to himself, dated
June 20th, 1868.

The bill of exceptions now thus stated the case as made
by the defendants:

"The defendants, then, to maintain the issues upon their part
introduced parol evidence, tending to show that Hamilton Smith
. . . entered into the possession of the premises in controversy
in the year 1845, with his family, claiming title thereto through
a parol gift of the property from his father, John Kilty Smith;
that he continued to reside thereon with his family until his
death in 1857; that his children, the present defendants, Caro-
line and Mary, were born upon the said premises; . . . that
Caroline was born in December, 1845, and Mary in October,
1847; that the said Hamilton during such occupancy always
claimed to own the said premises as aforesaid; that after his
death his children continued in the uninterrupted possession
thereof continuously, claiming the absolute ownership of said
property as heirs-at-law and representatives of their deceased
father, which possession was by residence, use, and occupation,
and with fixed inclosures, from the entry of the said Hamilton,
in 1845, till the present time."

The plaintiff then, *without giving any account of when it was
written, or where it had come from, or how he came possessed of
the letter* in order to show that the possession of the defend-
ants was not adverse to the title of John Chandler Smith,
but was held under him, and was by license or permission
from him, offered in evidence a letter thus:

"BALTIMORE, September 10th, 1845.

"DEAR BROTHER: I have just received father's letter, dated
26th August, sent to me by you.   He is well, and across the

lake with his friend, Mr. Montgomery. My health is better. I hope by strict diet and moderate exercise to recover in time. I am still at uncle's, as they insist upon my staying with them, where I am very comfortable, with good society; and I go out a visiting almost every evening with my two cousins. *As regards the advertisement for the rent of the house, there is no necessity for it, as I have determined to place you and your family there, as it will be the very best plan, and you will be better satisfied; so you may take possession as soon as Mr. Bagby leaves it.* There is nothing new here whatever. I have just written to father. We are all well here. I wish you to write to me. Give my love to Ellen and all.

     " Your affectionate brother,

          " JOHN CHANDLER SMITH.

" To HAMILTON SMITH,
   Georgetown, D. C."

The defendant objected to the reception of the letter in evidence.

" 1st. Because the plaintiff could not introduce his own declarations, statements, or letter, or the declarations, statements, or letter of those under whom he claims title, to show under whom the defendants or their ancestor went into possession of the property.

" 2d. Because the letter was not admissible in evidence for any purpose whatever.

" 3d. Because there was no evidence to show that it was in response to any letter written by Hamilton Smith, or that Hamilton Smith ever replied to it.

" 4th. Because it was not responsive to the defendant's testimony-in-chief, and was not admissible as a part of the *res gestæ.*

" 5th. Because it was not competent or admissible to prove any of the issues raised by the pleading or evidence.

" 6th. Because there was no evidence to show that Hamilton Smith acted upon any instructions or suggestions contained in it.

" 7th. Because it was irrelevant, inadmissible, and not proper proof."

The court, however, under exception, admitted the letter in evidence for the purpose for which it was offered.

The plaintiff then offered two letters from Hamilton Smith to John Chandler Smith, which were received without objection. They were thus:

"GEORGETOWN, March 5th, 1856.

"DEAR BROTHER I should like ·you to sent me the money you promest me in the first of this month Dear Brother I have been very unhappy since you left hear *thinking about leaveing my old home* where I have lived so long *I hope you will change your mind* and *make it* over to me as you and Father has made me menny faithful promises of its being mine and my childrens and now to think that I am to bea turned out of it and to seak shelter somewhere else I have looked forward to bea made happy but now my prospecks are blasted I have had but little pleasures in this world and expeck to *have lest if you ever part from this property I hope you will let me have the refusal of it* I am not calculated to do enny bisiness *and are to depend on your generosity and kindness* for Gord knows I miss Father very much It ought to have been me that Died in place of Father for he could do buisness I am fit for nothing on the face of the earth but a begar I hope you will let me hear from you soon all joine with me in love to you and all I remine your affectionate Brother

"HAMILTON SMITH."

"GEORGETOWN, March 11th, 1856.

"DEAR BROTHER I received your letter of the 6 of this month and we were pleased to heare from you *I am very sorry that my letter distressed you* I should not have wrote to you about the house, but as *you said you did not think you would give me this house* and as you *went to see Brook Williams the night you stayed here I thought he might want you to sell this place to him I am thankful to you to here you say that I may live here as long as I think proper If I have said or done enny thing rong to you to keep me from giveing me this House I am sorry for it and hope you will forgive me* . . . It grieves me to think that I have not a noughf to live on without going in det but I am thankful to God for what I have and hope he will wach over us and proteck us as he dus the foules of the are *I am thankful to you for what you have done for me and never shall forget you for your kindness to me* you say you will send me one hundred Dollars this month and if I take that to pay my bills with I shall have nothing to live on I

hope you will try and help us so as I shall not have to brake up the house as it would brake my heart to leave hear and and to leave the one I love  I pray God that evry think may go write with me  Write soon

"I remain your affectionate Brother

"HAMILTON SMITH."

The defendants then introduced evidence tending to prove that Hamilton Smith was a man of infirm capacity for business, of a nervous temperament, and easily frightened, and dependent upon others for the transaction of any important business; that in his lifetime he paid the taxes on the property, the receipts for which, with other papers, were taken by John Chandler Smith; that he handed over to the said John, to take care of and receive the interest on, bonds to the amount of $20,000, which his father had given to him.

. The court having charged the jury (among numerous other things), that twenty years of open, notorious, visible, continuous possession of inclosed property, under claim of title, against all the world, would, of itself, as a general rule, amount to a valid title; yet, that if the defendants had obtained their possession in subservience to or under the plaintiff, they would not be allowed afterwards to set up a claim to the property by means of their possession, and the jury having found for the plaintiff, and judgment having been entered accordingly, the case was now here on exception to the admission of the letter purporting to have been written September 10th, 1845, and given *supra*, on page 631. Errors were assigned to the charge of the court, but no exception had been taken to it.

*Messrs. W. D. Davidge and R. B. Washington, for the plaintiff in error :*

There is no evidence whatever to show when the letter which purports to have been dated "September 10th, 1845," was written, or that it was ever received by Hamilton Smith. The statements made in the letter are then mere hearsay evidence, and have no more efficacy than if they had been

made by parol to a third person having no privity with the defendants or those under whom they claim.* The effect of its admission was simply to mislead the jury, and when taken in connection with the instruction, that "if the defendants have obtained their possession in subservience to, or under the plaintiff, they are not allowed afterwards to set up a claim to the property by means of their possession," was conclusive of the whole case against the defendants.

*Mr. R. T. Merrick, contra :*

The defendant objected below to the reception of the letter for seven different reasons, all specific in character. No one of these' reasons is the one now urged before the court, to wit, in effect that the letter was not written at the time when it bears date, and that it was not received by Hamilton Smith. Is not the objection which was actually taken, to wit, that "there was nothing to show the letter was *in response* to any letter written by Hamilton Smith, or that Hamilton Smith ever *replied* to it " an implied admission that he had *received* it. Would any such specific, acute, far-fetched, and not very satisfactory objections as those two have been made, if it had been possible to make with truth the one natural and conclusive objection, that no such letter had ever been really written in 1845 to Hamilton Smith, or at least that he had never received any such letter? an objection which would have rendered both these two reasons and indeed all the others—no one of the whole seven being sound *even* if the letter had been inadmissible—superfluous.

Suppose that I claim a house as owner. Years afterwards the man claims the property by right of adverse possession. I say to him, "Why, I wrote to you years ago a letter under which you went in as my tenant." What, if the man never got my letter, would be the natural and simple answer? "Sir, I never received any such letter." And if, instead of

---

* Wright *v.* Doe, 7 Adolphus & Ellis, 313; McNamara *v.* Gibbs, 1 Carrington & Marshman, 412; Sturge *v.* Buchanan, 2 Moody & Robinson, 90; Richards *v.* Frankum, 9 Carrington & Payne, 221; Fairlie *v.* Denton, 3 Id. 102; Towle *v.* Stevenson, 1 Johnson's Cases, 110.

saying that, he were to say, "That letter was not in response to anything I wrote to you," and "I never replied to that letter," would he not make a clear though implied admission that he had received the letter? Independently of this, it being necessary that the court should satisfy itself of any fact on which the admissibility of the letter depended,* it is to be presumed that proof of such necessary fact was made to the judge trying the case.

The letter being thus proved to have been received, the date of the letter, September 10th, 1845, is *primâ facie* evidence of the time when it was written.† Moreover, the letter is part of the *res gestœ* under which Hamilton Smith obtained his possession.

Finally, if it was error in the court to admit the letter, it was not such an error as will warrant a reversal in this case; because the admissions of Hamilton Smith, in his letters of 1856 (*supra*, pages 633, 634), to the effect that he held under and by permission of John Chandler Smith, was conclusive against the adversary character of the possession set up as the defence against the admitted record title, and required the jury to find for the plaintiff.‡

Mr. Justice MILLER delivered the opinion of the court.

The admission of the letter having at its head, as a date, "September 10th, 1845," was objected to, and an exception taken, on the ground, among others, that the plaintiff could not introduce his own declaration, or that of those under whom he claimed, to show that the ancestor of the defendants had entered under the person making the declaration. Other and more specific grounds of objection were taken, but it is not necessary to mention them here, for it is certainly a

---

* Butler *v.* Mountgarret, 6 Irish Law Reporter, New Series, 102.

† Hunt *v.* Massey, 5 Barnewall & Adolphus, 902; *Anderson v.* Weston, 6 Bingham's New Cases, 296; Butler *v.* Mountgarret, 6 Irish Law Reporter, New Series, 102

‡ Greenleaf's Lessee *v.* Birth, 5 Peters, 135; Coale *v.* Harrington, 7 Harris & Johnson, 147, 157; Union Bank *v.* Planters' Bank, 9 Gill & Johnson, 439, 461.

sound principle of evidence that such a declaration as this, whether oral or in writing, is inadmissible, unless some exception to the general rule be shown. And this disposes of one of the arguments against the validity of the exception, namely, that while seven distinct objections are stated in the bill of exceptions, none of them are sound, though the letter may really have been inadmissible. We are of opinion that the one above mentioned is sufficient, unless the record shows some matter which would obviate it.

The objection is supposed to be removed by treating the letter as a part of the transaction by which Hamilton Smith obtained possession of the property, and thus coming within the rule of exceptional evidence admitted as part of the *res gestæ.*

But the difficulty is that there is no evidence that the letter *was* a part of that transaction. The precise time when Hamilton Smith took possession is not stated, save that it was in 1845, and after the 28th of May. The date found in the letter itself is relied on to show that it was written about the time possession was taken, and perhaps, if the other essential requisites were proven, the time would be near enough to let it go to the jury. But it is obvious that, as the date is only proved by the letter, the fact that the letter was written and received, must be proved before the date can be used to justify the admission of the letter. Many authorities are cited to show that, while the date found in an instrument may be disputed or disproved by other evidence, it is *primâ facie* to be taken as the true date. All these cases, however, have reference to the case of an instrument which has been admitted in evidence on other and sufficient ground, and where the true date has become important on some other issue than the admission of the letter. It is a most vicious example of reasoning in a circle, to admit the letter to prove the time when it was written, and assume this to be the real date for the purpose of admitting the letter.

Another objection is, that there is nothing in the record to show that the letter was delivered to Hamilton Smith, or

was ever in his possession or acted upon by him. It is not shown how the plaintiff came into possession of it, or from what source it was produced by his counsel at the time of the trial. It would violate nothing found in the record to suppose that the letter was written and delivered to the plaintiff by its supposed author on the same day it was read in evidence. When a party seeks to justify in a court of review the admission of such *ex parte* declarations of himself or his vendor, against the objection of the other side, he must show by the record some circumstance which would obviate the manifest soundness of the objection.

It is said, however, that, conceding the letter to have been improperly admitted, there is enough found in the record to show that the verdict was right, if it had been excluded, and, therefore, its admission worked the defendants no prejudice.

Two letters from Hamilton Smith to his brother are relied on to show his admission, as late as 1856, that he held under that brother, and acknowledged his superior title. And it must be conceded that they have a strong tendency to establish that proposition. But they are not conclusive; and, in the face of the statement that the defendants introduced parol evidence tending to show that Hamilton Smith entered under a parol gift of his father. it is impossible to say the letter worked no prejudice. This *parol* evidence is not given in the bill of exception, and may have been very strong. It is possible, nay, probable, that the jury, balancing between the weight of the parol evidence on one side and the letters of Hamilton Smith on the other, may have rested their verdict on this letter, as the best evidence of what really occurred at the time possession was taken. The jury might very well have said that, if this letter was written and received about the time the possession was taken—written by the man who had title to the land to the party about to enter into possession—they would presume that the latter entered on the premises under the permission given in the letter, while they might disregard the improvident admissions of a weak-minded and dependent man made to his brother ten or twelve years later.

We repeat the doctrine of this court laid down in *Deery* v. *Cray*,* that while it is a sound principle that no judgment should be reversed on error when the error complained of worked no injury to the party against whom the ruling was made, it must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the right of the party. The case must be such that this court is not called on to decide upon the preponderance of evidence that the verdict was right, notwithstanding the error complained of.

Other errors are assigned as to the charge of the court, but, as no exception was taken to that charge, it cannot be considered; nor do we deem the errors alleged as growing out of the prayers asked and refused likely to occur again, even if they are fairly presented by the record now.

For the error in admitting the letter objected to the judgment is reversed and the case remanded for

NEW TRIAL.

Mr. Justice DAVIS was absent at the argument.