CONSOLIDATED GROCERY CO. et al. v. HAMMOND. †

HAMMOND v. CONSOLIDATED GROCERY CO. et al.

(Circuit Court of Appeals, Fifth Circuit.    February 1, 1910.)

Nos. 1,909, 1,931.

1. EVIDENCE (§ 378*)—AUTHENTICATION OF LETTERS—LETTERS RECEIVED IN REPLY.

A statement in a letter offered in evidence that it is in answer to one written by the person addressed is not sufficient to prove the genuineness of the letter so offered or entitle it to admission; but there must at least be independent proof of the writing and mailing of the letter to which it purports to be an answer.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1648, 1649; Dec. Dig. § 378.*]

2. EVIDENCE (§ 318*)—HEARSAY—LETTERS OF THIRD PERSONS.

In an action for conspiracy, statements made in a letter written by a third person, not charged as a conspirator or to have been an agent of defendants, are mere hearsay, and not admissible in evidence to prove the conspiracy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1194; Dec. Dig. § 318.*]

3. APPEAL AND ERROR (§ 1170*)—REVIEW—HARMLESS ERROR—PRESUMPTION OF PREJUDICE.

Under the rule that a judgment should not be reversed for an immaterial error, it must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the defeated party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4540-4545; Dec. Dig. § 1170.*]

McCormick, Circuit Judge, dissenting.

In Error and Cross-Error to the Circuit Court of the United States for the Southern District of Florida.

Action by John T. Hammond against the Consolidated Grocery Company and others. Judgment for plaintiff, and both parties bring error. Reversed.

John T. Hammond brought suit against the Consolidated Grocery Company, a corporation, and 15 other corporations, for damages under the anti-trust act. Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200). For brevity, Hammond will hereafter be referred to as the plaintiff and the other parties as the defendants. The following count from the amended declaration sufficiently shows the issues presented:

"For that, whereas, heretofore, to wit, in the month of March, 1905, the plaintiff was a wholesale merchant doing business under the name of John T. Hammond Company, in the city of Orlando, in the county of Orange, in the state of Florida, and for some time, as such wholesale merchant, had bought and sold groceries, feed, and other commodities, and the plaintiff, under the name aforesaid, by his industry and by extensively advertising that he would commence such business and investment of a large sum of money in acquiring stores and warehouses, and in a diversified stock of groceries and goods suitable to the market, had acquired and built up a profitable business. And the plaintiff avers that he had chosen the said business as his permanent business, and then and there intended to continue in it indefinitely, and before the grievances herein complained of had sold large quantities of said groceries and

goods to a large number of retail dealers in such goods in a part of the state of Florida. And the plaintiff avers that during the time he was so as aforesaid engaged in said business at the place aforesaid, and before the grievances herein complained of, he had bought the most of his goods of manufacturers, producers, importers, and packers, hereinafter called the original sellers, in states of the Union other than the state of Florida, and from their brokers who represented them; and during the time that plaintiff was in the business aforesaid at the place aforesaid he was, according to the custom and usual course of action and business of such brokers, frequently solicited by the said brokers at his said place of business and elsewhere to purchase said goods from such original sellers through said brokers, by reason of which solicitations and means of such solicitations plaintiff was enabled to buy and did buy goods aforesaid through such brokers at the least practicable expense and price, and obtain a delivery thereof to him at Orlando aforesaid at the least practicable expense and without the labor and expense of traveling and correspondence by mail or otherwise with said original sellers, and which goods and merchandise when purchased by the plaintiff as aforesaid were shipped and transported from places in states of the Union other than the state of Florida to Orlando aforesaid, and there delivered to plaintiff for sale in his business. And the plaintiff alleges that heretofore, to wit, on and before the 31st day of March, 1905, and afterwards, each of the said defendants was engaged in doing generally an exclusive wholesale grocery business, or an exclusive jobbing business kindred thereto, in the Southern States of the Union and territories hereinafter mentioned; and being then and there engaged in the business aforesaid, the said defendants and each of them and divers other persons then and there engaged in doing generally a wholesale grocery business or jobbing business kindred thereto in the states of Florida, Alabama, Arkansas, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Tennessee, Texas, Virginia, District of Columbia, Indian Territory, Maryland, and Oklahoma, did then and there enter into a combination and conspiracy in restraint of trade and commerce among some of the several states of the Union, and did then and there combine and conspire with each other and with the other persons aforesaid to monopolize a part of the trade and commerce among some of the several states of the Union, and did then and there attempt to monopolize a part of the said trade and commerce; and the said defendants and each of them and the said divers other persons being engaged in the business aforesaid did enter into the said combination and conspiracy, and did combine and conspire as aforesaid with the design and intent of preventing every person engaged in said states and territory in doing business of a retail dealer in groceries from buying any groceries and goods from any of the said original sellers, and with the design and intent of persuading and preventing any of the said original sellers from selling any groceries and goods to any retail dealer aforesaid in the said enumerated states and territory; the said defendants and the other persons aforesaid thereby intending as a part of the said combination and conspiracy and of its design and intent to influence and coerce the said original sellers in the states other than those last aforesaid to sell goods only to wholesale dealers and jobbers aforesaid, of all whom doing business in the said enumerated states and territory the defendants and the said other persons who were members of the said combination and conspiracy constituted a very large influential part. And to effectuate and in furtherance of said designs and intents the said defendants and the said other persons did then and there agree with each other not to buy any groceries and goods from any such original seller aforesaid who sold or would sell the same to such retail dealers, and not to buy from any such original seller who might be found inimical to and indifferent to the interests of the said defendants as such wholesale dealers and jobbers, and did further then and there agree with each other to maintain certain definite and fixed prices for certain groceries and goods below which each member of the said combination was bound not to sell to any retail dealer aforesaid, which prices were to be listed and changed from time to time to promote the interests and profits of the defendants and the other persons aforesaid; and the plaintiff further avers that the said defendants and the other persons aforesaid, as members of the said combination, arrogated to themselves to conclusively decide whether or not any dealer in

groceries in the states and territories aforesaid was engaged in an exclusive wholesale grocery business or an exclusive jobbing business kindred thereto, which decision when made the said defendants and said other persons designed and intended should be obeyed and conformed to by the said original sellers. And the plaintiff avers that afterwards, to wit, in the month of March, 1905, on behalf of the said defendants and the said other persons, it was decided by the said defendants and the said other persons according to the rules and regulations of the said defendants and the said other persons that the plaintiff, under the name of the John T. Hammond Company, was a retail dealer in groceries, and interested in the business of a retail dealer in groceries at Orlando aforesaid, and was not doing an exclusive wholesale business, and thereafter the plaintiff was denied the right to become a member of said combination and conspiracy through and by reason of the decision aforesaid; and the plaintiff thereafter in furtherance of said combination and conspiracy was denied and deprived of the right to buy groceries from the said original sellers in the manner aforesaid by and through the influence of defendants and the said other persons, which said denial and deprivation of the right to buy was in furtherance and execution of the design and intent aforesaid of the defendants and all other persons who had combined and conspired as aforesaid and entered into the said combination and conspiracy. Wherefore plaintiff alleges that by reason of the said unlawful combination and conspiracy and of the aforesaid acts and doings of the said defendants and other members thereof in the furtherance of the said combination and conspiracy and its aforesaid designs and intents, he, the plaintiff, was restrained in buying and was unable to buy goods in the usual course of the freedom of trade and commerce among the states, and through the facilities aforesaid, and was thereby injured in his property and in his said business, and was forced to give up and retire from his said business, to the plaintiff's damage of $200,000, wherefore he brings this suit."

After demurrers to the declaration had been overruled, the defendants pleaded "not guilty," and filed the following additional plea:

"And for a further plea to the first count of said declaration said defendants traverse and deny and say that it is not true that in the month of March, 1905, the plaintiff was a wholesale merchant doing business under the name of John T. Hammond Company in the city of Orlando, in the county of Orange, state of Florida, and for some time as such wholesale merchant had bought and sold groceries, feed, and other commodities, and the plaintiff, under the name aforesaid, by his industry and by extensively advertising that he would commence such business, and investment of a large sum of money in acquiring stores and warehouses, and in a diversified stock of groceries and goods suitable to the market, had acquired and built up a profitable business; that he had chosen the said business and then and there intended to continue in it indefinitely, and before the grievances therein complained of had sold large quantities of said groceries and goods to a large number of retail dealers in such goods in a part of the state of Florida; and that during the time he was so as aforesaid engaged in said business at the place aforesaid, and before the grievances therein complained of, he had bought the most of his goods of manufacturers, producers, importers, and packers, hereinafter called the original sellers, in states of the Union other than the state of Florida, and from their brokers who represented them; and during the time that plaintiff was in business aforesaid at the place aforesaid he was, according to the usual custom and course of action and business of such brokers, frequently solicited by the said brokers at his said place of business and elsewhere to purchase said goods from such original sellers through said brokers, by reason of which solicitations and means of such solicitations plaintiff was enabled to buy and did buy goods aforesaid through such brokers at the least practicable expense and price, and obtained a delivery thereof to him at Orlando aforesaid at the least practicable expense of traveling and correspondence by mail or otherwise with said original sellers, and which said goods and merchandise when purchased by the plaintiff as aforesaid were shipped and transported from places in states of the Union other than the state of Florida to Orlando aforesaid and there delivered to the plaintiff for sale in his business."

On the trial, after proving that the letter came into his possession "by regular mail," the plaintiff offered in evidence the following letter:

"Jacksonville, Fla., April 27, 1905.

"Mess. John T. Hammond Co., Orlando, Fla.

"Gentlemen: Yours of the 24th. Certainly glad to know that you intend to enlarge your business, and hope that I will be successful in doing a large business with you on all lines I handle.

"Confidentially, we are not permitted to sell you now. The Southern Wholesale Grocers' Association have reported that you are not a wholesale grocer, and not entitled to wholesale prices. On what they base their decision on in this case I don't know; but if you are in wholesale business exclusively, and not carrying on any retail stores under any other name, you are entitled to jobbers prices, and I hope you will insist upon being put on the jobbing list, to which you are entitled. Of course, if you are running any retail stores under other names, then they will, no doubt, object to your being put on the list, but naturally the jobbers with whom you come in direct competition would object to your being put on the list, and to get prices from the brokers that they do. This is very important to your interest, I should think, and I give you this information, as I want to see you succeed, if possible, in your new enterprise, and I want to sell you some goods. I am at this time prohibited from selling you goods, as we cannot sell anybody that is not a member of the Southern Wholesale Grocers' Ass'n. I, however, have an understanding with the members of this association that when I receive orders from any house, to ship goods that I carry in stock, that I have to fill these orders. Therefore, this being the case, if there is anything on the list that I enclose that interests you, would be glad to receive your order.

"No. 2 W. C. oats is worth today 41¾¢. Jacksonville. Hay $16.25 for strictly No. 1. I have not received any further orders from you for milk, but I hope this is not the case. I am of the opinion, however, that you may have received a case or two in the lot that I shipped to you, that did not give satisfaction. The fact of the matter is, we had some milk reach here about that time, which was not cooked enough, and it will bloom and become sour. If you did have any milk like this, we stand willing to give you just what you paid for it, including the freight on it from this point. Of course, they would have to be returned to us.

"Wishing you success in your new business, and if there is anything I can give you I will be glad to do it.

"Yours very truly, St. Elmo W. Acosta."

The defendants objected to the admission of the letter in evidence on the following grounds:

"(1) Because said letter contained matter injurious to the defendants' case, and said letter was not shown and did not appear to be known to or authorized by the defendants, or any of them, or to have been written with their knowledge or consent, and no connection between them or any of them or the Southern Wholesale Grocers' Association and said St. Elmo W. Acosta was shown.

"(2) The amended declaration did not charge any conspiracy between defendants and any manufacturers, producers, or original sellers, or their agents, or any broker or brokers.

"(3) No conspiracy was shown or proven between said defendants, or any of them, and said Acosta in the premises, or to make defendants, or any of them, liable for or responsible for said letter or statements of said Acosta.

"(4) That said letter was hearsay and inadmissible in evidence.

"(5) That there was no fact shown or connection between Acosta and the Southern Wholesale Grocers' Association, upon which the statements of said letter concerning Southern Wholesale Grocers' Association, or as to said Acosta not being permitted to sell goods to plaintiff, or any one objecting thereto, or any other matter concerning the same, were based, or that could make it admissible in evidence.

"(6) That said letter was incompetent and inadmissible to prove the matters attempted to be proven thereby as to, and the statements thereof as to, the

Southern Wholesale Grocers' Association or Acosta not being permitted to sell goods to plaintiff, or any objection thereto.

"(7) That said alleged letter was not sufficiently proven or authenticated to make it admissible in evidence."

The court overruled the objections and the letter was read in evidence, and the defendants duly excepted. The trial resulted in a judgment and verdict for the plaintiff for $25,000, and the case is brought here by the defendants, who assigned that the court erred in overruling the objections to the letter as evidence.

Charles M. Cooper and John C. Cooper, for plaintiffs in error and defendants in cross-error.

H. Bisbee, George C. Bedell, and Joseph H. Jones, for defendant in error and plaintiff in cross-error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). 1. One of the objections made to the admissibility of the letter was that it was not sufficiently proved or authenticated to make it admissible in evidence.

A letter is not a self-proving instrument, and proof of some kind tending to show its genuineness is always required. The mere contents of a written communication, purporting to be a particular person's, are, of themselves, not sufficient evidence of genuineness. 3 Wigmore on Evidence, § 2148. The only evidence offered to show that the letter was genuine was proof that the plaintiff received it "by regular mail." It was received as evidence, without further proof, we presume, because it was construed as purporting to be an answer to a letter previously written by the plaintiff. It was written on April 27th, and contains a reference to "yours of the 24th." It has been held that, where it appears from the evidence that a letter is received by due course of mail in answer to one previously posted to the writer, the letter may be submitted in evidence without further proof. 3 Wigmore on Evidence, § 2153. But, in such case, it must first be proved that a letter was written and mailed, to which the letter offered is an answer. National Acc. Soc. v. Spiro, 78 Fed. 774, 24 C. C. A. 334. The defect in the preliminary proof here is that it was not shown that Hammond wrote and posted a letter to Acosta. If that was shown, his reply, received in due course of mail, may have been treated as prima facie genuine. The statement in a letter offered that it is in answer to a letter previously received cannot, of itself, make the letter admissible. To so hold would make the statement in the letter prove the writing and posting of the previous letter, and also prove its own genuineness. That cannot be permitted. Smith v. Shoemaker, 17 Wall. 630, 21 L. Ed. 717.

2. But, if the letter had been sufficiently proved to be a genuine letter written by Acosta, could it then have been received as evidence? Acosta was not sued; he was not in the alleged conspiracy; he was not the agent of the defendants, or either of them; he is a third person, not connected in any way with the defendants. The letter, having been written by a third person, without the knowledge of the defendants, and without their subsequent sanction or approval, seems to us to be hearsay testimony, so far as the defendants are concerned,

and, for that reason, inadmissible against them. Nevada Company v. Farnsworth, 102 Fed. 573, 42 C. C. A. 504; Dwyer v. Dunbar, 5 Wall. 318, 18 L. Ed. 489; Insurance Company v. Guardiola, 129 U. S. 642, 9 Sup. Ct. 425, 32 L. Ed. 802; 1 Greenleaf on Evidence (16th Ed.) § 98 et seq.; 2 Wigmore on Evidence, § 1361 et seq.

3. It is urged that the admission of the letter should not cause a reversal because there is other legal evidence to support the verdict.

It is, of course, a sound principle that a judgment should not be reversed when the error complained of worked no injury. Referring to the application of this rule, in Smith v. Shoemaker, supra, page 639 of 17 Wall. (21 L. Ed. 717), the court said:

"It must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the right of the party. The case must be such that this court is not called on to decide upon the preponderance of evidence that the verdict was right, notwithstanding the error complained of."

The letter in question here bears so upon the issues joined that we cannot, in view of other evidence in the record, say that it was not injurious to the defendants.

Upon the exceptions to other rulings we give no opinion, because they may be presented in a different aspect in another trial.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

The judgment of reversal makes it unnecessary to decide the assignment of error, made on the cross-writ of error, that the Circuit Court erred in refusing to grant the motion of the plaintiff to enter judgment for three times the amount of the verdict.

The costs in both cases will be taxed against the plaintiff.

McCORMICK, Circuit Judge (dissenting). I do not concur in the judgment of this court in this case. I am of the opinion that the act in question so far as it relates to the recovery of civil damages is highly remedial in its character and provisions and should receive liberal treatment in its administration. The view of this court as indicated in the opinion of the majority seems to me to be not liberal but strict as if construing and administering a penal statute. In my opinion the judgment of the Circuit Court should be affirmed.