## McGOWAN v. ARMOUR.

(Circuit Court of Appeals, Eighth Circuit. January 26, 1918.)

No. 4892.

1. EVIDENCE ⬅︎178(6)—SECONDARY EVIDENCE—ADMISSIBILITY—LETTER.

In an action for alienation of her husband's affections, where plaintiff testified that, after reading a letter written by defendant addressed to her husband, the husband destroyed the same, secondary evidence of the contents of the letter is admissible.

2. EVIDENCE ⬅︎378(4)—DOCUMENTARY EVIDENCE—LETTER—ADMISSIBILITY.

A letter purporting to have been written by defendant to plaintiff's husband, whose affections it was charged defendant had alienated, is inadmissible, where neither the handwriting nor the signature was identified as that of defendant, for a letter does not prove itself, and must be shown to have been written by the person against whom it is produced, or by some one authorized to act in his behalf.

3. EVIDENCE ⬅︎317(2)—ADMISSIBILITY—HEARSAY.

In an action for alienation of her husband's affections, testimony by plaintiff as to alleged statements made by defendant to the husband, and by him communicated to plaintiff, is inadmissible, being hearsay.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Action by Clara T. Armour against Mabel Estelle McGowan. There was a judgment for plaintiff, and defendant brings error. Reversed.

Frank McNulty, of Aberdeen, S. D. (Howard Babcock, of Sisseton, S. D., on the brief), for plaintiff in error.

Daniel J. Conway, of Sioux Falls, S. D. (Muller & Conway and Walter H. Shurtleff, all of Sioux Falls, S. D., on the brief), for defendant in error.

Before CARLAND, Circuit Judge, and AMIDON and MUNGER, District Judges.

AMIDON, District Judge. This is an action at law by Clara T. Armour for alienation of her husband's affections, brought against Mabel Estelle McGowan as defendant. It resulted in a verdict in favor of plaintiff for $25,000. On condition that a new trial would otherwise be granted, the court was authorized to reduce this to $10,000. Judgment was entered for that amount, to review which defendant brings error.

Plaintiff and her husband were itinerant mattress cleaners. The husband had been addicted to the excessive use of intoxicating liquors, going on protracted sprees from time to time. He had taken the Keeley cure without any permanent results. These habits of his had led to serious differences between him and his wife, and numerous threats, both oral and in writing, on her part, to separate from him.

⬅︎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Shortly before this suit was brought they separated, after the husband had been on a protracted debauch. There is one child, a daughter about 12 years of age. Defendant, Mrs. McGowan, is a widow, having three daughters, and is a person of considerable means.

Plaintiff in error relies mainly upon two groups of assignments challenging rulings as to the admissibility of evidence.

[1, 2] 1. The first relates to an alleged letter written by defendant to plaintiff's husband. Plaintiff testified that she found the letter in her husband's pocket during his temporary absence from the room; that he returned just as she was finishing reading it, snatched it from her hand, and tore it up, throwing part of it into the wastebasket, and part of it out of the window. There was sufficient proof to show that the letter had been destroyed, so as to make secondary evidence of its contents admissible, provided only that the letter itself, if it had been present in court, would have been admissible. The only evidence as to the genuineness of the letter as a document written by defendant consists in the statement of plaintiff that she thought she would know defendant's writing, and her statement that the name at the end of the letter was Mrs. M. E. McGowan. The plaintiff did not testify that the letter was in Mrs. McGowan's handwriting, or that the signature was hers. Without any further proof, and over an objection which clearly challenged the foundation which had been laid, plaintiff was permitted to testify to the contents of the letter. This was clearly erroneous. A letter does not prove itself. In order to make it evidence it must be shown either to have been written by the person against whom it is produced, or by some one authorized to act in his behalf. Consolidated Grocery Co. v. Hammond, 175 Fed. 641, 645, 99 C. C. A. 195; Nichols v. Kingdom Iron Ore Co., 56 N. Y. 618; Wigmore on Evidence, § 2131, p. 2891; 14 Ency. of Evidence, p. 742. Nothing of this kind was shown in respect to the letter in question. Receiving this proof was therefore error, and it was highly prejudicial in its character.

[3] 2. Plaintiff was asked to state what her husband told her the defendant had said to him. In the main no attempt was made to lay a foundation for this hearsay evidence. It was not produced as expressive of the husband's feeling, or as so intimately connected with any act of his as to be part of such act within the verbal act rule. On the contrary, it was elicited as a mere narrative by the husband of a past conversation between him and defendant. There are several other features of this evidence which lay it open to suspicion. One is that it was a mere formula of words which plaintiff testified her husband repeated to her on three different occasions in almost identically the same language. Another circumstance is that this formula is said to have been uttered by defendant to plaintiff's husband at their second meeting. Their first meeting was a pure business call, to obtain mattresses for repair. At this the plaintiff herself was present. Plaintiff testified that her husband told her that at their second meeting a few days later, the defendant made this remarkable statement to him:

"Well, he said that she had told him that she thought he was entirely too nice to go around the country doing work like that; that if he would leave

me, and get a divorce from me, that she had plenty of money, and she could take care of. him; that he did not have to work like that."

All the authorities agree that evidence of this kind is open to grave suspicion, and should be received only after the most careful scrutiny. Counsel cites, as the authority which was mainly influential in the trial court, the decision of Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639. There the plaintiff in an alienation case was permitted to testify as follows:

"Q. What did George" (plaintiff's husband) "say to you about that time in relation to his father, if anything?

"A. Why, he told me, * * * one night after we had retired, that his father wanted him to leave me."

This, however, was given as explanatory of a violent outburst of love and weeping on the part of plaintiff's husband. The case is regarded as an extreme one, but it furnishes no support for the evidence which was received in the present case. It needs only a casual inspection of that evidence to see that it is doubly diluted hearsay. It is what she said he said she said. It constituted the groundwork of plaintiff's whole testimony. Mr. Wigmore states the rule accurately, and cites the authorities, at section 1730 of his work on Evidence as follows:

"The existence of an emotion—hatred, malice, affection, fear, and the like—is usually evidenced by conduct or by utterances indirectly indicating the feeling that inspires them. But a declaration directly asserting the existence of the emotion is admissible, under the present exception, like a statement of any other kind of mental condition * * * A special application is also found in actions for alienation of affections, * * * where the state of affections of the wife to the husband, or of the husband to the wife, becomes material. Here, the declarations of the person as to her or his own state of affections are admissible under the present principle."

Mr. Armour's statements, indicative of his own feelings, could be testified to by any person who heard him make such statements. It is also true that any statements made by defendant indicative of her feelings towards Mr. Armour might be given in evidence by any person who heard her make such statements. The vice of the evidence which was received in the present case is that plaintiff, who was testifying, did not hear the defendant make the statements. The statements were made to her husband. Her husband, however, was not a witness. He never told the court under oath, and subject to cross-examination, what the defendant's statements were to him. On the contrary, defendant's statements were all run through one more conduit, namely, the plaintiff. She was permitted to tell what her husband told her that defendant had said to him. It is entirely plain that this went beyond any permissible rule. Anybody who heard Mrs. McGowan make statements expressive of her affections for Mr. Armour could testify as a witness before the court to those statements. That, however, is as far as the hearsay rule has been relaxed in such cases. The vice of the evidence received by the trial court is that it was passed through one more messenger, and that messenger was plaintiff, whose mind was clouded by every motive of interest and passion to distort the hearsay statements which she claimed to report.

In the quest for Armour's feelings, he was converted into a general agent of the defendant to make the most damaging admissions on her behalf. To permit that was to lose sight of substantial justice in the pursuit of a dangerous and purely incidental matter. To say that the vice of this practice can be cured by admonitions to the jury as to the restricted purpose for which the evidence is received is to indulge a purely academic view of the lay mind. The verdict that was rendered in the present case is the best proof of the fallacy of such confidence.

The errors to which we have called attention were fundamental, and, in our judgment, resulted in a complete miscarriage of justice.

The judgment is reversed, and a new trial ordered.