## AMERICAN EMPLOYERS' INS. CO. v. ROUNDUP COAL MINING CO.

### No. 9996.

Circuit Court of Appeals, Eighth Circuit.

Oct. 29, 1934.

W. C. Fraser, of Omaha, Neb. (E. B. Crofoot, of Omaha, Neb., on the brief), for appellant.

Edgar M. Morsman, Jr., of Omaha, Neb. (Edgar M. Morsman, III, of Omaha, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action at law to recover on a fidelity bond issued by appellant insuring appellee against loss sustained through the fraud, dishonesty, or embezzlement of its employees. It is alleged that one Bunker, an employee of the appellee, while in its employ, through fraud, dishonesty, and embezzlement, caused loss to appellee in the sum of $18,232.17. The lower court directed a verdict for appellee at the close of all the evidence, and from the judgment entered thereon this appeal has been taken.

We shall refer to the parties as they were designated in the lower court.

Two issues presented on this appeal are, in our view, controlling: First, it is contended by defendant that, under its contract of indemnity, it was not liable for any losses occurring prior to June 16, 1930, because plaintiff carried with the Massachusetts Bonding & Insurance Company prior thereto similar coverage, and, for all losses occurring prior

to that date, the Massachusetts Company was liable, and not the defendant. Second, that the court erred in admitting in evidence Exhibit 65, a statement prepared by plaintiff's auditor, and that without it there was no competent evidence to sustain the verdict.

It is admitted by plaintiff that it had carried a similar contract of indemnity with the Massachusetts Bonding & Insurance Company, which, by its terms, expired June 16, 1930; but it is contended that the loss here involved was within the coverage of defendant's policy.

The bond on which this action is based provides that the defendant shall reimburse the employer for the loss of any money as shall be sustained by the employer by reason of the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication on the part of any of the employees. It is further provided as follows:

"The foregoing agreement is subject to the following conditions:

"1. The term of this bond begins on the 16th day of June, 1930, at noon, standard time. * * *

"5. The Employer shall file with the Corporation any claim for which the Corporation is liable hereunder within fifteen months after the lapsing or cancellation of this bond from any cause whatsoever."

As a rider to the bond, there was added a special contract containing the following, among other, provisions:

"Whereas, the Employer has been carrying fidelity suretyship as follows: Massachusetts Bonding—S-22358; and

"Whereas, said fidelity suretyship, as of the effective date of the attached bond, has been cancelled or allowed to expire, or has been terminated by agreement, as is evidenced by the issuance and acceptance of the attached bond and this rider; and

"Whereas, said fidelity suretyship may provide that any loss thereunder shall be discovered, or claims therefor shall be filed, within a certain period after the final expiration, cancellation or termination thereof,

"Now, Therefore, it is hereby understood and agreed as follows:

"(1) That the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under said fidelity suretyship which shall be discovered after the expiration of any such period, and before the expiration of the time limited in the attached bond for the discovery of loss thereunder, and which would have been recoverable under said fidelity suretyship had it continued in force, and also under the attached bond and such loss or losses occurred during the currency thereof, and which is not recoverable under said fidelity suretyship by reason of its expiration or cancellation.

"(2) That nothing herein contained shall be construed to render the Company liable under the attached bond for a larger amount on account of any loss or losses under said fidelity suretyship, than would have been recoverable thereunder had it continued in force, or to increase the time for discovering, or making claim for, loss under said fidelity suretyship beyond what would have been the time had it continued in force.

"(3) That the aggregate liability of the Company on account of any loss or losses shall in no event exceed the amount carried under the attached bond on the Employee causing such loss or losses, whether sustained under said fidelity suretyship or under the attached bond or partly under each."

The bond of the Massachusetts Company contained provision that: "For any default within the terms of this bond by any employee bonded hereunder, claim may be made against the surety at any time during the period for which premium for that employee has been paid to it, and for two years thereafter."

Because of the special contract contained in the rider attached to the bond in suit, it is necessary to consider the provisions of the Massachusetts bond. That company, by the plain terms of its contract, undertook to be liable for losses discovered while the bond was in effect or discovered within two years after the bond, by its terms, had expired. Under this contract, we think the Massachusetts Company would not be liable for losses not discovered within two years after the expiration of the contract, even though they had been incurred during the life of the policy. It is, however, urged by defendant that, by reason of the provisions of section 44-322, Compiled Statutes of Nebraska 1929, the Massachusetts Company could not limit its liability to losses discovered during the life of the policy and for two years thereafter. The statute reads as follows: "No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed ma-

terial or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

The provision in the quoted clause from the Massachusetts Company's policy, with reference to giving notice of default, is doubtless within the purview of this statute. But we are of the view that the provision by which the company insures against losses discovered within the duration of the policy, or two years thereafter, is not covered by the Nebraska statute. Defendant relies strongly on George v. Ætna Casualty & Surety Co., 121 Neb. 647, 238 N. W. 36, and American Surety Co. v. Bankers' Savings & Loan Ass'n (C. C. A. 8) 67 F.(2d) 803. In these cases the question was not the time of discovering the loss, but the time of giving notice of such discovery, and the Supreme Court of Nebraska in the George Case held that under this statute the provision with reference to time of giving notice was ineffectual, unless the failure to give notice as provided had contributed to the loss. The statute does not prohibit an insurance company from limiting its coverage to losses incurred during the life of the policy and discovery within two years thereafter; and hence the provision should be upheld. Thompson v. American Surety Co. of New York (C. C. A. 8) 42 F.(2d) 953. The defendant, by its contract, undertook to become liable for losses which had occurred under the Massachusetts policy "which shall be discovered after the expiration of any such period and before the expiration of the time limited in the attached bond for discovery of loss thereunder, and which would have been recoverable under said fidelity suretyship had it continued in force."

The second question challenges the ruling of the court in admitting in evidence Exhibit 65. It is the contention of plaintiff that its cashier, Bunker, had, through dishonesty, fraud, and embezzlement, caused it loss, and that to conceal the embezzlement he had failed to credit on the books of the company the full amount of payments actually received from the company's various customers. Plaintiff's auditor, in attempting to check the company's accounts, wrote these various customers and received from them in reply letters which denied the correctness of the accounts and stated what purported to be the correct amount of their accounts. From these letters and the books the auditor made up this Exhibit 65. In his testimony he says: "I had letters sent to all of the customers to verify their accounts, in other words, asking the customers if they owed the amount as shown by the ledger. * * * Exhibit 65 is a list compiled by me of the amounts that the customers said they did now owe in the letters which I received from them. It shows the difference between the amount which the customers claimed they owed and the amount which the ledger showed was due from them."

On cross-examination the witness said: "Our sole claim here is that anything he is short was taken from cash receipts. We haven't any record of any kind or nature that will show how much actual cash he handled."

After testifying that there was no way of proving the actual amounts collected by Bunker over and above those specified on the deposit slips which it was claimed had not been deposited in the bank, the witness was interrogated as follows:

"Q. Couldn't you assemble a statement of all of the local cash business, whether paid by check or cash, from your records and then assemble a list of all of these manifests for coal sold at places other than Roundup, and then take a total of all that as the items were paid for and arrive at a total of the money involved and handled by Bunker? A. That possibly might be done, Mr. Fraser, but it has not been done.

"Q. Then couldn't you take all the money that he did deposit in the bank to your account and by drawing a comparison between those two determine and find out how much money was missing? A. That possibly might be done, but it is a very long drawn out procedure over a period of twelve years.

"Q. But you satisfied yourself by merely writing a letter to these people and getting a communication back from them as to how much they said they actually owed? A. Which letters were written and replies received.

"Q. And it was on the basis of these letters, containing what these people said about it, that you arrived at this total of eighteen thousand and some odd dollars? A. That is correct.

"Q. And those items do not involve cash at all that Bunker handled and that you claimed he appropriated? A. Not directly, no."

The exhibit when offered was objected to as being hearsay, and we cannot escape the conclusion that it was not only hearsay, but was made up of a series of written self-serving declarations. Defendant was afforded no opportunity of cross-examining the authors of these letters, and hearsay testimony is not made competent by the mere fact that it may be written. Hart-Parr Co. v. Barth Mfg. Co. (C. C. A. 8) 249 F. 629; Union Pacific R. Co. v. Perrine (C. C. A. 8) 267 F. 657; McGowan v. Armour (C. C. A. 8) 248 F. 676; Van Kannel Revolving Door Co. v. Uhrich (C. C. A. 8) 297 F. 363.

The exhibit reflected the difference between the ledger accounts of the various customers and the amounts which these customers, in their letters addressed to the auditor, claimed were due. The books and records of the customers on which the letters purport to have been based were not produced nor identified. Neither did Bunker testify that the compilation was correct, and it must be borne in mind that such damages as were suffered by the plaintiff arose from a misapplication or embezzlement of funds and not by reason of the making of false or fraudulent entries in plaintiff's books. There is no testimony to prove that the difference between what the ledger showed plaintiff's customers owed and what the customers actually owed was correctly reflected by Exhibit 65. But, even if it had been proven that the books were incorrect as claimed, this would not have proved that Bunker appropriated or embezzled the difference. It is argued that defendant's bond insured against Bunker's dishonesty, but the mere fact that he may have been dishonest is not a sufficient basis for recovery. Dishonesty in the abstract cannot be compensated in damages, and in a suit to recover on the bond the dishonesty must have resulted in pecuniary loss.

We are of the view that it was prejudicial error to overrule defendant's objection to the admission of Exhibit 65, and also that the evidence failed to show that Bunker actually appropriated or embezzled plaintiff's funds. The judgment appealed from is therefore reversed, and the cause remanded, with directions to grant defendant a new trial, and for further proceedings consistent herewith.