### JONES et al. v. MENCIK et al.

(Circuit Court of Appeals, Third Circuit. February 23, 1923.)

No. 2900.

1. **Contracts ⬾27—Previous course of dealings cannot establish contract, without proof same course was to be followed.**

A cotton broker cannot claim a contract based on a course of dealing or understanding followed in previous transactions between the parties, where there is no evidence that it was understood the same course of dealing was to be followed in the transactions in controversy.

2. **Principal and agent ⬾22(1)—Agent's orders or statements cannot prove agency.**

The agency of one who ordered a broker to purchase cotton for another cannot be proved by the orders or statements made by the agent.

3. **Brokers ⬾24(2)—Letter held to show ratification of one purchase by brokers, but not of another.**

In a suit to recover from the Alien Property Custodian brokers' loss on purchases of cotton for an alien enemy, a letter written by the purchaser in which he stated the brokers had received the necessary margin for the first purchase, but that he received the advice of sale of the second purchase immediately following the advice of purchase, so he had no time to furnish the margin, *held* to show ratification of the first purchase, but not of the second.

4. **Evidence ⬾378(4)—Letter, whose signature was not proved, is not admissible.**

In a suit against the Alien Property Custodian to recover a claim against an alien enemy, a letter written by the alien, ratifying the transaction on which the claim was based, is not competent, in the absence of proof of the alien's signature to that letter.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in equity by Sidney F. Jones and another, partners trading as George F. Jones & Son, against J. Mencik, Thomas W. Miller, as Alien Property Custodian, and another. From a decree dismissing the complaint, complainants bring error. Affirmed.

Edwards & Smith, of Jersey City, N. J. (Edwin F. Smith and Raymond Dawson, both of Jersey City, N. J., of counsel), for plaintiffs in error.

Walter G. Winne, U. S. Atty., of Hackensack, N. J. (Adna R. Johnson, Jr., and Dean Hill Stanley, both of Washington, D. C., of counsel), for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

⬾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court, dismissing complaint on the ground that the written instrument on which it was based was not proved. The complainants are engaged in business as brokers in New York City and are members of the New York Cotton Exchange, and the defendant Mencik is a resident of Hohenelbe, Austria-Hungary, now part of Czecho-Slovakia. The action was brought to recover losses sustained by complainants on marginal transactions in cotton and was based on an alleged contract between them. On June 25, 1915, complainants, on an order from their representative, Siegfried Pichl, of Nacod, Bohemia, purchased with their own money 300 bales of cotton, and on July 7, 1915, 400 bales more, and charged them to the account of Mencik. When the transactions began, Mencik had not deposited any margins, but the complainant's ledger credits him with 4,500 kronen, or $675, on July 20, 1915. Complainants, however, allege that they were deposited by Mencik in the Vienna Bank Verein, Vienna, Austria, after the purchase of the 300 bales on June 25, 1915, and before the purchase of the 400 bales, but the exact date of the deposit is nowhere disclosed. Cotton having dropped in price, on July 12, 1915, complainants sold the 700 bales at a loss of $2,640. They charged this loss to Mencik's account, and after applying to it certain credits of Mencik with them in former transactions, there remained a total loss of $2,-332.18.

The Alien Property Custodian determined that Mencik was an alien enemy within the meaning of the Trading with the Enemy Act of October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.), and, in accordance with the provisions of that act, upon his demand, the Lesser-Goldman Cotton Company of St. Louis, Mo., turned over to him $13,794.76, in its hands belonging to Mencik.

The complainants brought suit under the provisions of the Act against Mencik and the Alien Property Custodian. Process was served by publication on Mencik, who did not appear nor answer, and against whom a decree pro confésso was taken. The Alien Property Custodian defended, and at the conclusion of the trial the complaint was dismissed.

The real question in this appeal is whether or not there was between the parties a binding contract which permitted the complainants to dispose of the 700 bales of cotton and charge the loss to Mencik. The following facts are relied on to establish the contract:

On May 20, 1915, Pichl cabled to complainants an order to purchase cotton, and on the same day wrote a letter confirming the order. The cablegram was never produced, but the letter, among other things, contained the following:

"May 20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Madsen buy 300 January 10¢
200 January at 90
200 January at 80."

Edward A. Binder, manager for complainants, testified that "Madsen" was the code name for J. Mencik, and that these orders were for January delivery on his account, and in pursuance of that order the

purchases were made; that these purchases were made in accordance with that practice and understanding in previous transactions. They cabled a statement of the purchases to Pichl, and mailed letters to him confirming them, and through him to Mencik, who, upon the receipt of the notice of the purchase of the 300 bales on June 25, 1915, deposited the margin of 4,500 kronen to the credit of the American Express Company for the benefit of the complainants, but he failed to deposit the margin of 6,000 kronen, as he should have done, on notice of the purchase of 400 bales on July 7, 1915. The confirmatory letter contained this reservation:

"It is further understood that on all marginal business the right is reserved to close transactions, at our discretion, without further notice when margins are running out."

Admittedly there is no evidence of an order so far to bind Mencik, but on November 27, 1915, Mencik came to the assistance of complainants and wrote a letter to them, admitting the receipt of the several notices, and charging them with arbitrarily exceeding their authority. Complainants contend that Mencik in this letter confirmed and ratified the transactions.

The establishment of a binding contract is met with several difficulties:

[1] 1. The contract declared on cannot be based on a contract, course of dealing, or understanding followed in previous transactions between the parties. Whatever these might have been, they have no binding force in this particular case, and, besides, there is no evidence that it was understood that the same course of dealing was to be followed in these transactions as in former ones. Such assumption furnishes no sound basis on which to construct a particular contract.

[2] 2. The order of Pichl cannot bind Mencik. If we assume that "Madsen" is the code name of Mencik, and that Pichl ordered these purchases for him, it was admitted that complainants had no legal evidence in their possession to show that Pichl had authority from Mencik to order the purchases made for him, and so, on the order of Pichl, without proof that he was Mencik's agent, acting within the scope of his authority, Mencik could not be bound. 1 Elliott on Contracts, § 465: 31 Cyc. 1567; 21 R. C. L. 489. Pichl's agency could not be proved by his own order or statements. Standard Oil Co. v. Linol Co., 75 N. J. Law, 294, 68 Atl. 174. There is no evidence of any contract which Mencik executed.

[3] 3. Did he ratify the order of Pichl or the transactions in fulfillment thereof? Was the letter written by Mencik on November 27, 1915, a ratification of the contract or order? In it he said:

"You received the necessary margin funds for the first 300 bales within a few days [after execution], and for the second twice 200 bales I received advice of purchase and immediately following it your advice of sale. There was not even sufficient time to send you the necessary margins, and there already came your debit note for the arbitrary sale, to which you are not entitled. I gave you through Mr. Pichl the order, to realize the whole 700 bales, but not under 10 cents."

This letter, if admissible, does establish to our satisfaction that Mencik gave the order to Pichl; that after receiving the notice of the

purchase of the 300 bales, with the reserved right to sell without further notice, when margins were running out, he deposited the 4,500 kronen, and thereby confirmed and ratified the contract with the reserved right of sale. This letter, however, cannot be regarded as a ratification of the sale of the 400 bales, for they were not purchased until July 7, and were sold on July 12, 1915. The mail confirming this purchase and stating the reservation could not have been received by Mencik in Hohenelbe before the sale was made. He received the "advice of sale" immediately after he "received advice of purchase."

[4] But Mencik's signature to the letter was never proved, and so the letter was inadmissible in evidence. It therefore is not a ratification of the 300-bale transaction, for a judgment based on it could not stand.

If this conclusion be a hardship on the complainants, it is a risk they assumed in undertaking the transaction under the circumstances. In order to sustain the contention of complainants, it would be necessary to disregard well-established rules of evidence and principles of law, the observance of which, experience has demonstrated, most nearly, considering all cases, secures exact justice.

Our conclusion on the alleged contract makes it unnecessary to discuss other assignments of error and questions involved.

The decree of the District Court is affirmed.