23 C.C.P.A.(Patents)

## VICK CHEMICAL CO. v. THOMAS KERFOOT & CO., Limited.

### Patent Appeal No. 3532.

Court of Customs and Patent Appeals.
Nov. 27, 1935.

Edward S. Rogers, James F. Hoge, and L.B. Stoughton, all of New York City, and Francis L. Browne and Thomas L. Mead, Jr., both of Washington, D. C., for appellant.

Asher Blum, Hugo Mock, and Walter L. Post, all of New York City (Charles R. Allen, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Commissioner of Patents, affirming a decision of the Examiner of Interferences which dismissed appellant's petition to cancel trade-mark registration No. 181,259, dated March 18, 1924, issued to appellee, for the word "Vapex." The said mark was registered for use upon an "inhalant for the relief of cold in the head and the like." The proceeding is under section 13 of the Trade-Mark Act of February 20, 1905 (15 U.S.C.A. § 93), which section reads as follows: "Sec. 13. That whenever any person shall deem himself injured by the registration of a trade-mark in the Patent Office he may at any time apply to the Commissioner of Patents to cancel the registration thereof. The commissioner shall refer such application to the examiner in charge of interferences, who is empowered to hear and determine this question and who shall give notice thereof to the registrant. If it appear after a hearing before the examiner that the registrant was not entitled to the use of the mark at the date of his application for registration thereof, or that the mark is not used by the registrant, or has been abandoned, and the examiner shall so decide, the commissioner shall cancel the registration. Appeal may be taken to the commissioner in person from the decision of examiner of interferences."

Appellant in its petition for cancellation alleges: that since prior to 1894, it has used the word "Vicks" as a trade-mark applied to various medicinal, pharamaceutical, and chemical preparations, naming a number of such preparations, including "salve," and that "at the present time the trade-mark Vicks is applied to liver pills, cough drops, nose and throat drops, and a rubifacient salve used in the treatment of colds * * *"; that said mark was duly registered on November 19, 1918, registration No. 123,667; that since about 1911 petitioner (appellant) has also used as a trade-mark for said salve the word "Vaporub," and that said last-named mark, together with the mark "Vicks," has since 1911 been conspicuously applied to packages containing said salve; that the said mark "Vaporub" was registered on April

74

6, 1915, registration No. 103,601. Petitioner alleges that the goods upon which its marks are used and the goods upon which the said mark "Vapex" is used are of the same descriptive properties; that the word "Vapex" so nearly resembles both of petitioner's registered marks, "Vicks" and "Vaporub," as to be likely to cause confusion in the minds of the public and to deceive purchasers, and that said mark "Vapex" has in fact caused such confusion.

The petition for cancellation further alleges that said mark "Vapex" "is not now used, and for several years preceding this time has not been used in inter-state commerce in the United States by the Registrant, Thos. Kerfoot & Co., Limited, but is used by some firm or person other than said Registrant."

The petition further sets out the usual allegations of injury and damage.

The answer of appellee denies that the goods to which the mark "Vapex" is applied are of the same descriptive properties as are the goods to which appellant's marks are applied; denies the allegation of the petition with regard to the similarity of the respective marks; and alleges that there never has been any confusion in the mind of the public growing out of the use of the said marks by the respective parties; denies that it was not using or had not used the said mark "Vapex" for several years preceding the filing of appellant's petition; alleges that it is the present owner of said mark; and denies petitioner's allegations of injury and damage.

Both sides took voluminous testimony. Appellee objected to certain letters offered by appellant as incompetent and hearsay and not duly authenticated, to which reference will be made hereinafter. Appellee also objected to certain rebuttal testimony offered by appellant upon the ground that such testimony should have been part of appellant's case in chief, and was not proper rebuttal. This also we shall advert to later herein.

Most of the testimony offered by appellant was in support of its claim of actual confusion in the mind of the public respecting the marks "Vapex," "Vicks," and "Vaporub," and most of the testimony offered by appellee was in support of its contention that no such confusion existed.

The Examiner of Interferences held that, from an inspection of the marks as a whole, confusion in trade was not likely, and that the evidence in the case, apparently including the letters to which appellee had objected as aforesaid, did not possess sufficient probative force to change or vary his conclusion arrived at from an inspection of the marks. The Examiner of Interferences declined to consider the evidence produced by appellant in rebuttal relating to confusion in trade, holding that such evidence was a part of the case in chief for appellant.

It appears also that it was contended before the Examiner of Interferences that the question of confusion was res adjudicata by reason of a previous opposition proceeding in the Patent Office between the parties hereto, wherein appellee sought the registration of the word "Vapex" inclosed within a triangle, which application for registration was opposed by appellant, setting up the marks "Vicks" and "Vaporub" and a triangle. In said proceeding the opposition of appellant was sustained and the application of appellee for said registration refused. The Examiner of Interferences held that the decision in said proceeding was not res adjudicata upon the question here involved for the reason that the marks there involved were not the same as are the marks in issue here.

Appellant apparently did not press this contention before the Commissioner, and in this court makes no claim that the decision in said former proceeding is res adjudicata of the issue here involved.

Upon appeal to the commissioner, the decision of the Examiner of Interferences was affirmed, whereupon appellant took the appeal now before us.

The Commissioner in his decision, while holding that the letters hereinbefore referred to were not competent evidence, and affirming the holding of the Examiner that appellant's evidence in rebuttal was improper, stated that, even considering all the foregoing as proper evidence, and all the other evidence in the record, he was of the opinion that confusing similarity between the marks of the respective parties had not been established. He also held that appellant's contention that appellee was not using the mark "Vapex" had not been established, stating that the statute is "not susceptible to the narrow interpretation contended for."

Before us appellant makes two contentions, as follows:

(1) That the record establishes that the mark "Vapex" is confusingly similar to the marks "Vicks" and "Vaporub," when applied to the goods of the respec-

tive parties, or at least there is such doubt upon this question that, under the familiar rule, it should be resolved against the newcomer.

(2) That the record establishes that the mark "Vapex" was not used by appellee at the time this proceeding was initiated.

That the goods of the respective parties are of the same descriptive properties, and that appellant's use of the marks "Vicks" and "Vaporub" and registration of the same were prior to the use and registration of the mark "Vapex" by appellee, is conceded.

It appears from the testimony that appellant's goods to which the marks "Vicks" and "Vaporub" are applied are widely distributed throughout the entire United States. The vice president of appellant testified that, during the 5-year period from 1927 to 1932, an annual average of between 15 and 20 million families in the United States had been purchasers of "Vicks Vaporub," and that in 1932 over 26 million jars of this article were sold.

Likewise, sales of goods to which the mark "Vapex" is applied are extensive; the testimony showing that such sales amount to approximately 1,500,000 bottles annually.

Appellant relies not only upon the claim of confusing similarity between its marks "Vicks" and "Vaporub" and appellee's mark "Vapex," which it claims is apparent from an inspection of the marks, but it contends that the evidence produced by it establishes actual confusion in commerce in the use of said marks by the respective parties, particularly as relating to the origin of the goods to which the marks are applied.

We are in agreement with the views of the Commissioner and the Examiner of Interferences that an inspection of the marks themselves fails to reveal a confusing similarity between the mark "Vapex" and either of the marks "Vicks" and "Vaporub." As observed by the Commissioner, " 'Vicks' and 'Vapex' have only the initial letter in common, and while the spoken words terminate with the same sound, even then they are clearly distinguishable in that the first has only one syllable while the latter has two." We do not think that the ordinary purchaser would be likely to be confused or mistaken either as to goods or origin by the slight similarity between the marks "Vapex" and "Vicks."

With respect to the similarity between the marks "Vapex" and "Vaporub," the Commissioner in his decision said:  *  *  * As between "Vaporub" and "Vapex" the only similarity, either when written or spoken, is the first syllable, "Vap"; and in view of the obvious differences it is difficult to comprehend how this one syllable in common could result in confusion.  *  *  *

We would also observe in this connection that it is the well-settled rule that, in determining the question of confusing similarity between marks, such marks must not be dissected, but must be considered as a whole. Vick Chemical Co. v. Maurice E. Cordry, 54 F.(2d) 428, 19 C.C.P.A.(Patents) 828.

We are clear that an inspection of the marks in issue does not reveal a confusing similarity between the mark "Vapex" and appellant's marks "Vicks" and "Vaporub."

However, appellant's counsel contends that actual confusion between said marks has been established to such an extent that it should be held that the use of the word "Vapex" upon the goods to which it is applied so nearly resembles appellant's marks as to be likely to cause confusion or mistake in the mind of the public. In support of this contention appellant introduced the testimony of 19 witnesses, and certain documents and letters. Appellee, in support of its contention that there was no confusing similarity between said marks, introduced the testimony of 69 witnesses, and certain documents.

The Examiner of Interferences considered all of the evidence in the record, except the testimony offered by appellant in rebuttal, which he declined to consider upon the ground that such testimony was not proper rebuttal, but related only to appellant's case in chief. With respect to the evidence considered by the Examiner, as aforesaid, we find the following in his decision: "The testimony of both parties has been carefully considered by the examiner. It is believed that the testimony of the petitioner, for reasons that will more fully hereinafter appear, possesses much less probative force than is claimed for it by the petitioner. No attempt is made herein to determine its value relative to that offered by the respondent. It suffices to state that, giving the maximum probative force to which the testimony of the petitioner is believed to be entitled, it does not change or vary, substantially, the conclusion which the examiner has reached from

an inspection of the marks themselves considered as a whole and which the parties actually use in trade. This conclusion is that confusion in trade is not likely. Otherwise stated, the examiner is not willing to here surrender his own judgment on this matter by reason of the testimony produced by the petitioner. * * *"

The Commissioner in his decision, after analyzing certain of the testimony offered in behalf of appellant, stated as follows:

"In determining the weight and effect to be given the evidence just referred to, and similar testimony of other witnesses, I have necessarily been influenced to some extent by the enormous volume of petitioner's sales. Its vice-president, Mr. Allen T. Preyer, testified that during the five year period from 1927 to 1932, an annual average of between fifteen and twenty million families in the United States had been purchasers of 'Vicks Vaporub'; and the record discloses that of this item alone over 26,000,000 jars were sold in 1932. It is not surprising, therefore, if occasional instances of confusion occurred; for as observed by the Court in the case of Parfumerie Roger & Gallet v. M. C. M. Co. (C.C.A.2dCir.) 24 F.(2d) 698, 699, 'Some buyers will be confused by the most remote similarities.'

"Petitioner also offered in evidence about 30 letters, post cards, and other communications claimed to have been received by it from various unidentified firms and individuals, which would tend to indicate that the purported senders had confused 'Vapex' with one or another of petitioner's products, or believed it was manufactured by petitioner. No foundation was laid for the introduction of any of these communications, save that of Mrs. Patrenelis, whose testimony has already been referred to; and I am therefore clearly of the opinion that they are not competent evidence. Subject to certain exceptions which have no application here the rule is fundamental that before any document may properly be received in evidence there must be some proof of its authenticity. Consolidated Grocery Co. v. Hammond (C.C.A.5thCir.) 175 F. 641; Varley Co. v. Ostheimer (C.C.A.2dCir.) 159 F. 655; Jones v. Mencik (C.C.A.3d Cir.) 286 F. 890; Henry Romeike, Inc., v. Albert Romeike & Co., Inc., 179 App. Div. [712] 718, 167 N.Y.S. 235, (affirmed 227 N.Y. 561 [124 N.E. 898]).

"Petitioner insists that the communications referred to were admissible, without authentication, to show confusion in the public mind, and cites as authority for this proposition the case of Parfumerie Roger & Gallet v. M. C. M. Co., Inc., supra. It was there held that certain letters received by plaintiff had been improperly excluded 'on the ground that they were self-serving declarations.' The Court said: 'That, of course, they were not, and, moreover, they seem to us, all things considered, to have been enough authenticated to be competent.' Here, however, the ground of objection was that the proffered exhibits were 'incompetent and hearsay,' and they were read into the record without any pretense of authentication, so that obviously the case cited can have no application.

"But even if all these communications were properly before me I would be unable to find from the whole record that the claimed confusion had been established. Throughout the period covered by this correspondence petitioner was receiving in excess of five hundred pieces of mail per day. And as may readily be expected this large mass of correspondence included references not only to 'Vapex' but to such utterly dissimilar marks and names as Musterole, Mentholatum and Luden's Cough Drops. Mr. W. A. Smith, an employe of petitioner, stated in his testimony:

"'We received mail for Vapex. We received mail for Strohmeier's Cough Drops, and others too numerous to remember.'"

"In view of the large amount of mail received errors of this kind were bound to and did occur, regardless of whether petitioner's marks were or were not similar to those of other manufacturers. Under such circumstances evidence of this character is unimpressive. Standard Accident Insurance Co. v. Standard Surety & Casualty Co. (D.C.) 53 F.(2d) 119."

With respect to the testimony offered by appellant in rebuttal, the Commissioner stated: "Complaint is made because the examiner of interferences declined to consider certain evidence introduced by petitioner on rebuttal. Without going into detail it is sufficient to say that all this evidence, in so far as it is competent for any purpose, is merely cumulative of petitioner's evidence in chief, and the examiner of interferences was therefore fully justified in the ruling complained of. In

reaching the conclusions above outlined, however, I have given this evidence the same consideration as that offered in chief."

It will be observed from the foregoing that the Commissioner held that certain evidence offered by appellant was inadmissible for the reasons stated by him, but that, assuming the same to be admissible, it would not change his conclusion that the confusion claimed by appellant had not been established.

We do not find it necessary to pass upon the admissibility of the evidence referred to by the Commissioner because, assuming that it was admissible, and giving to it all the weight to which it is entitled, we are in agreement with the Commissioner that the record fails to establish that the mark "Vapex," as used by appellee, so nearly resembles the marks "Vicks" and "Vaporub," as used by appellant, as to be likely to cause confusion or mistake in the mind of the public.

We think the views expressed in the case of P. Lorillard Co. v. Peper (C.C.A.) 86 F. 956, 960, are applicable to the facts in the case at bar. The court there said: "It may well be that, where many sales were made, some individuals, not particularly attentive, may have purchased the defendant's, supposing they were purchasing the plaintiff's, package. Such things will happen in the ordinary course of business, no matter how great the differences; and the fact that they do happen, while it is not to be ignored, is not to outweigh the evidence which comes from a personal inspection of the packages and labels."

We do not deem it necessary to analyze the voluminous testimony in the record, and content ourselves with stating that, assuming, without deciding, that all of the evidence offered by appellant was admissible, it does not outweigh the evidence which comes from an inspection of the respective marks in issue. We are clearly of the opinion, from such inspection, that there is no confusing similarity between them.

■ Appellant makes another contention, viz., that it is shown by the record that the mark "Vapex" was not used by appellee at the time appellant filed its petition for cancellation of the mark. It is not necessary for us to set out the facts upon which appellant bases this contention, because, even if such contention were established, appellant would not be entitled to a can-

cellation of appellee's registration of the mark "Vapex," for the reason that, since said mark is not confusingly similar to appellant's marks here involved, it, appellant, could not be damaged by the registration of the mark "Vapex" by appellee.

■ It is well established that in cancellation proceedings damage must be shown in order to sustain the cancellation of a mark. American Cyanamid Co. v. Synthetic Nitrogen Products Corp., 58 F.(2d) 834, 19 C.C.P.A.(Patents) 1235; Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., 49 F.(2d) 482, 486, 18 C.C.P.A. (Patents) 1294. In the last-cited case we said: "He [the petitioner for cancellation] would have no right to complain about the registration of the offending mark if, at the time he filed his petition, he was not injured by it."

In the case of United Shoe Machinery Corp. v. Compo Shoe Machinery Corp., 56 F.(2d) 292, 295, 19 C.C.P.A.(Patents) 1009, we said: "The statute gives any person who believes he would be damaged the right to oppose, and any person who shall deem himself injured the right to petition for cancellation. These provisions are very broad, and should be broadly construed. Of course, Congress did not mean to grant these rights to a mere intermeddler, to one who had no interest in the use of the term, and thereby authorize such a person to interfere in the affairs of others and in the business of the Patent Office. Certainly the person seeking to cancel a registration or oppose an application for registration must have a greater interest than a member of the general public who by such registration suffers no invasion of his rights and privileges. It is well understood in the application of equitable remedies that one who seeks such application is bound to show an interest in a suit personal to himself and not such an interest as he has only by virtue of being a citizen. Tyler v. Judges of the Court of Registration, 179 U.S. 405, 406, 21 S.Ct. 206, 45 L.Ed. 252; Massachusetts v. Mellon, 262 U.S. 447, 448, 43 S.Ct. 597, 67 L.Ed. 1078. We know of no reason why this rule does not apply here."

Inasmuch as we have held that the marks here in issue are not confusingly similar, appellant could not be damaged by the registration of the mark "Vapex" by appellee, within the meaning of section 13 of said Trade-mark Act of February 20, 1905.

It appears that, after the original certification of the transcript of record by the Commissioner of Patents, appellee suggested a diminution of the record and proceedings in said cause, whereupon this court issued a writ of certiorari, pursuant to which certain additions to the record were certified to the court by the Commissioner of Patents and printed. The court, in issuing the writ, ruled· that the assessment of costs for the printing of such additions to the record should await the final determination of the case. We find that the matters certified, pursuant to our order, should have been originally included in the record by appellant. Therefore, the costs of printing such additions to the record, which are found on pages 920, 921, 922, and 923 of the record, are assessed against the appellant.

For the reasons stated herein, the decision of the ·Commissioner of Patents is affirmed.

Affirmed.