## STARDUST, Inc. v. WEISS et al.

District Court, S. D. New York.

May 7, 1948.

---

276

Root, Ballantine, Harlan, Bushby & Palmer, of New York City, and A. W. Murray, of Chicago, Ill. (John E. F. Wood, James P. Kranz, Jr. and F. E. Thorne, all of New York City, of counsel), for plaintiff.

Mock & Blum, of New York City (Asher Blum and Murray Winkler, both of New York City, of counsel), for defendants.

GODDARD, District Judge.

This is a suit for alleged trade-mark infringement and unfair competition. Injunctive relief and damages are sought. Jurisdiction is alleged under Federal Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 97, and Section 24(7) of the Judicial Code, 29 U.S.C.A. § 41(7).

The plaintiff, Stardust, Inc. [formerly known as Industrial Undergarment corporation], is a New York corporation, manufacturers of women's wearing apparel, principally undergarments, and since 1935 have sold and advertised them under the trade-mark "Stardust."

The defendants, Mr. and Mrs. Emanuel Weiss and Mrs. Herman Levy are partners doing business under the name of L. & W. Brassiere Co. in this district, and since 1944 manufacture and sell brassieres under the name "Starlight".

When plaintiff started in business in April, 1935 it manufactured women's "slips" and marketed them under the name of "Stardust." In 1940 it began to manufacture a "brassiere top slip" which is a combination of a brassiere and a slip which was also sold under the name "Stardust." In 1942 it manufactured blouses; in 1943—women's suits; in 1944—women's slacks, "briefs" and "panties." In the latter part of 1945 it began the manufacture of brassieres and by January, 1946 their sale to the general public was under way, all plaintiff's articles being marketed under the mark—"Stardust." In 1946 plaintiff changed its corporate name to Stardust, Inc.

During the period from 1935 to 1940 plaintiff contributed to the cost of advertising by department stores featuring the name "Stardust" and in the period from 1940 to 1947 has spent some $800,000 in advertising in magazines, radio contests, etc.

On March 3, 1941, plaintiff filed application No. 442,132 in the United States Patent Office for registration of the trade-mark "Stardust" for "slips" in class 39 clothing alleging continuous use since November, 1935. The Examiner rejected the application on the ground that hosiery and slips were similar goods, citing Reg. No. 234,931 owned by Charles Chipman Sons Co., Inc., covering "Stardust" for hosiery. The Examiner suggested that if applicant would file a consent by Lever Bros. Co., the assignee of the Chipman

registration, the application would be allowed. This consent was filed on June 30, 1941, and Reg. No. 391,172 on "Stardust" was allowed. November 13, 1942, plaintiff filed application No. 416,187 for registration of "Stardust" for women's wearing apparel, namely—slips, petticoats, briefs, undershorts, underdrawers, panties, brassieres, etc. The registration stated that "The trade-mark has been continuously used and applied to said goods in applicant's business since November, 1935, on slips; and October 22, 1942—on the rest of the goods." However, the record shows that, with the exception of slips, plaintiff in 1942 only made and/or sold one or two of the items mentioned in the statement and these sales were merely qualifying sales to support the registration. Registration was denied for all the articles with the exception of slips which was allowed in view of the Chipman registration. Plaintiff filed another application for all other garments, including brassieres, outer skirts, dresses, etc., and another letter of consent from Lever Bros. Co., which was refused, the Examiner stating—"The averment in the letter of consent of Lever Bros. Co. is the owner of trade-mark Registration No. 235,931 'Stardust' for hosiery is not understood. The records in this office indicate that Lever Bros. Co. is engaged in manufacturing soaps and oils and some kindred products." Finally, plaintiff filed an assignment to it from Lever Bros. Co. of the Chipman registration executed on August 20, 1943 purporting to transfer the Chipman registration to plaintiff "together with the good will of the business in connection with which said mark is used." Thereupon Reg. No. 416,187 was issued to plaintiff on September 4, 1945. Although the document purportedly assigned the good will of the business, Lever Bros. Co. had no existing business in hosiery so that they had no good will to assign and all that was transferred was the trade-mark.

Defendants started in business in 1944 and in July 1944 began selling brassieres, their only product under the name "Starlight," and by March, 1945, defendants had sold some half million brassieres. In September, 1945, they began to advertise it nationally. Prior to January 1, 1946, plaintiff admitted it had not sold as many as a dozen brassieres under the trade-mark "Stardust," and its first advertisement of them was in January, 1946. By that time defendants had sold some 2,000,000 brassieres. Up to February, 1946 defendants had spent about $54,000 in advertising and by September, 1947 had spent some $153,000 for advertising.

The plaintiff's brassieres are sold for one dollar and defendants' from one dollar upwards, and in many instances the retailer handles both products.

■ Plaintiff must show that its mark is either a valid technical trade-mark or that the mark has acquired a secondary meaning and that the sale by defendants of their goods under their mark is likely to produce confusion in the minds of the buying public as to the source of the article. See General Time Instruments Corporation v. United States Time Corporation, 2 Cir., 1948, 165 F.2d 853; Lucien Lelong, Inc., v. Lander Co., Inc., 2 Cir., 1947, 164 F.2d 395; LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115.

■ Registration of a trade-mark does not enlarge substantive rights but merely creates certain remedial and procedural advantages. Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corporation, 2 Cir., 105 F.2d 908, cert. denied 308 U.S. 616, 60 S.Ct. 262, 84 L.Ed. 515; Parfumerie Roger & Gallet v. M. C. M. Co., 2 Cir., 24 F.2d 698.

■ "Trade names are arbitrary and fanciful when they do not, by their usual and ordinary meaning, denote or describe the products to which they are applied, but rather come to indicate their purposes by application and association." Skinner Mfg. Co. v. General Food Sales Co., D.C., 52 F. Supp. 432, 445, affirmed, 8 Cir., 143 F.2d 895, certiorari denied 323 U.S. 766, 65 S.Ct. 119, 89 L.Ed. 613; Nims, Unfair Competition & Trade Marks, 4th Ed., Vol. 1, Sec. 189, p. 522.

■ The word "Stardust" as used by plaintiff is not a descriptive word; it is a fanciful and arbitrary name and hence may be a valid technical trade-mark.

■ A trade-mark owner has a right to extend its mark to new wares which may be the natural outgrowth of the trade-mark products. See S. C. Johnson & Sons v. Johnson, D.C., 28 F.Supp. 744, modified 2 Cir., 116 F.2d 427; Durable Toy & Novelty Corporation v. J. Chein & Co., 2 Cir., 133 F.2d 853; Standard Brands v. Smidler, 2 Cir., 151 F.2d 34. This is especially true where the mark is used on the entire output of the user rather than on a particular class.

■ Although plaintiff, when it started to use its mark, did not manufacture or sell brassieres, such an article, it is clear, is a natural outgrowth from the manufacture of other items of women's undergarment wearing apparel.

■ This extended protection is an absolute right which prevails unless prior to the time the plaintiff started to manufacture and sell brassieres a newcomer entered the field with a mark similar or identical to the plaintiff's and the plaintiff did not, although knowing, take positive steps to assert its right to protection of its mark in the new field of endeavor. Under such circumstances the plaintiff's right to relief is no longer absolute but is modified so that relief is based on the equities of the case. Judge Learned Hand clearly set forth this doctrine in Emerson Electric Mfg. Co. v. Emerson Radio & Phonograph Corporation, 2 Cir., 105 F.2d 908, 911. In that case the plaintiff sought to enjoin the defendant from continuing to sell Emerson radios on the ground that although the plaintiff had never made radios prior to the time the defendant had, the manufacture of radios was the natural outgrowth of its, plaintiff's, line of goods of the same general character. Judge Learned Hand said—

"If the plaintiff proposed to keep the radio market as an unused preserve, it was bound to protect it against invaders by affirmative action; it could not impose upon them the duty of divining its own purposes or possible mistakes of the public."

■ The evidence in the case at bar shows that plaintiff did not acquiesce in the defendants' use of its [defendants] mark in the brassiere field. The plaintiff first learned of the defendants' use of the mark "Starlight" in March, 1945. It was brought to the attention of the plaintiff by a wholesale customer who had received a counter display card of the defendants. Immediately thereafter plaintiff served notice of infringement upon the defendants by letter dated March 24, 1945. This was prior to any substantial advertising by the defendants. The defendants did not start to advertise to any degree until September, 1945—some six months later. It is therefore evident that this plaintiff acted at the earliest possible time to protect its trademark in a field which could be and as now appears, is a natural extension of the plaintiff's line.

The next question is whether the defendants, in using their trade-mark, encroach upon the area of protection to which the plaintiff in the use of its mark, is entitled.

■ The burden is upon the plaintiff to show that the sale by the defendants of their goods under their trade-mark is likely to produce confusion in the mind of the buying public as to the source of the product. General Time Instrument Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853; Lucien Lelong, Inc., v. Lander Co., Inc., 2 Cir., 1947, 164 F.2d 395; La Touraine Coffee Co. v. Lorraine Coffee Co., supra; Best & Co. v. Miller, 2 Cir., 167 F.2d 374; Triangle Publications, Inc. v. Joseph D. Rohrlich, 2 Cir., 1948, 167 F.2d 969.

The proof offered by the plaintiff consists of four classes, namely, the testimony of certain retailers as to confusion on their part and on the part of their customers; the similarity between the two words; actual confusion as evidenced by the results of shopping tests; the receipt of letters evidencing confusion on the part of the writers of them.

Berney, a wholesaler in ladies wear for some twenty seven years, testified to writing a letter to the plaintiff on June 2, 1947, asking the plaintiff to send his concern "Starlight" brassieres. He testified that the misdirected inquiry was due to the fact that when he was visiting one of his retail customers he saw boxes containing defendants' product and thought the goods came from

the plaintiff. One Beck, an operator of a chain of retail stores, who has been in the ready-to-wear business some twenty years, testified that he maintains an office here in New York for purchasing, and that upon receiving a package of defendants' product in which was disclosed a display card, he thought the merchandise was that of the plaintiff. Leona Kievets, a retailer, in a deposition stated that when she first heard of "Starlight" brassieres she believed that they were the product of the plaintiff and continued under this mistake until she was informed otherwise by her wholesale supplier. Garmey, a merchandise manager for the basement department of a large Toledo department store, who has been engaged in retail selling for over twenty years, testified that on a couple of occasions customers returned "Starlight" brassieres because they had mistakenly taken them for "Stardust" brassieres.

 This evidence is strong evidence as to probability of confusion caused by the two marks for these witnesses are members of the trade and hence more familiar with various marks used in the field and better able to distinguish between similar marks than is the ordinary customer. S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978, 987; Parfumerie Roger & Gallet v. M. C. M. Co., 2 Cir., 24 F.2d 698; Nims, Unfair Competition & Trade Marks, Vol. 2, Sec. 531, p. 1035.

 The second offer of proof as to confusing similarity are the marks themselves. Both the plaintiff and defendants have for their first syllable the word "star" which as a word in itself has had scores of users on a large variety of goods. There is no similarity of sound or meaning in the last syllables, namely "dust" and "light." As a composite whole, namely "Stardust" and "Starlight," the two words are not unalike in appearance. Each conveys the idea of a glow of light from the stars. If a customer were shown the two marks the difference would be noticeable. However, if the customer was not familiar with the two marks and was shown only the article bearing the defendants' mark, the customer might easily mistake it for the plaintiff's. The test to determine whether the two words are confusing, is whether the ordinary purchaser buying under normal conditions, depending upon memory or recollection of the mark, might be confused by the other. La-Touraine Coffee Co. v. Lorraine Coffee Co., supra; F. W. Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635; S. S. Kresge Co. v. Winget Kickernick Co., supra; Pillsbury v. Pillsbury Flour Mills, 7 Cir., 64 F. 841; Lou Schneider, Inc., v. Carl Gutman & Co., D.C., 69 F.Supp. 392.

 It is clear that a customer desiring to recall the mark of the plaintiff may well call for or accept goods bearing defendants' mark, since they are both associated with a single or identical idea.

 This plaintiff in an interference proceeding objected to the use of the word "Stardom" by another party as being confusingly similar when applied to goods of the same descriptive properties and its objection was sustained by the Patent Office and the Court of Customs and Patent Appeals. Rice-Stix Dry Goods Co. v. Industrial Undergarment Corp., 152 F.2d 1011, 33 C.C.P.A., Patents, 813. Although that decision has no binding effect in this action it is some evidence as to what experts in the field of trade-marks consider as confusingly similar, and may be accorded weight as a comparative guide in testing the similiarity between "Stardust" and "Starlight." There is very little difference between "Starlight" and "Stardom," the latter mark which the Court of Customs and Patent Appeals considered confusingly similar to plaintiff's "Stardust."

 Further proof to establish confusing similiarity between the marks, consisted of the testimony of paid shoppers who, after suit was started, visited a number of retail stores in various parts of the country. The instructions to these shoppers were that they were to ask for a "Stardust" brassiere in each case and to purchase what was offered. Seventy one retail stores were visited. In seven instances the clerk, when asked for a "Stardust" brassiere without further comment delivered a "Starlight" brassiere. In seven

280

other instances the clerk responded in words or substance "You mean 'Starlight.'" In eleven other instances the clerk stated in substance, "We don't have 'Stardust' but we do have 'Starlight'" showing that the similiarity of the two caused a common association in the mind of the clerk. The confusion thus evidenced by the clerks is convincing proof as to the probability of confusion. See S. S. Kresge Co. v. Winget Kickernick Co., supra; Parfumerie Roger & Gallet v. M. C. M. Co., supra; Nims, Unfair Competition & Trade Marks, Vol. 2, Sec. 335, p. 1053.

The other proof relates to certain letters which were received by the plaintiff and are alleged to constitute evidence of confusion. All of these letters, as well as the matter to which they refer, were written or occurred after the complaint in this action was filed.

■ The first group of letters consists of a letter from a store in Decatur, Alabama, stating that it would like to handle "your undergarments." The heading of the letter reads "Starlight, Inc., Empire State Bldg., New York 1, N. Y." In other words it is directed to defendants but at plaintiff's office address. The second letter of this group is upon the letterhead of the plaintiff and directed to a store in Decatur, Alabama, inquiring whether "this letter was intended for us" and signed by J. Brandt of the plaintiff corporation. Upon the bottom of this typed letter there is a long hand notation that the letter was meant for the plaintiff; this is signed merely in the name of the store. The letter appears to have arrived in an envelope bearing a Decatur, Alabama post mark and the letterhead of the store, correctly addressed to "Stardust." The writer of the long hand notation was not produced. There was no evidence to show the store exists. There was no possible opportunity for the defendants to test the reasons for the writing of the note or the circumstances surrounding its being. Under such circumstances the letters are inadmissible. Parfumerie Roger & Gallet v. M. C. M. Co., supra; Material Men's Mercantile Ass'n, Ltd., v. Material Men's Credit Agency, 191 App.Div. 73, 180 N.Y.S. 801; Vick

Chemical Co. v. Thomas Kerfoot & Co., 80 F.2d 73, 76, 23 C.C.P.A., Patents, 752.

The second group of letters involve instances where plaintiff purportedly discovered advertisements in local papers bearing plaintiff's name "Stardust" in stores which the plaintiff had no record of having sold any goods. The plaintiff wrote a letter addressed to these stores, a return receipt requested, inquiring as to the advertisements. The replies received were either on the letterhead of the stores to whom the inquiry was directed, or a notation on the plaintiff's original letter. The replies stated in substance that the erroneous advertisements were due to the confusion caused by the similarity of the two names.

It may well be that these letters are admissible since they are sufficiently authenticated by the fact that they are letters received by due course of mail, the tenor of which indicates a knowledge of the contents. 7 Wigmore on Evidence, Sec. 2153; Charles H. Scholes v. Oppenheim, Sup., 136 N.Y.S. 37.

However, the defendants did not have an opportunity to ascertain how the mistake happened, how careful or careless the senders of the letters were when they inserted the advertisements, and a number of other points which may well have been elicited on cross-examination.

■ Although these letters may be some evidence bearing on the probability of confusion, see United Drug Co. v. Parodney, D.C., 24 F.2d 577; Kerfoot & Co. v. United Drug Co., D.C., 38 F.2d 671; Vick Chemical Co. v. Thomas Kerfoot & Co., 80 F.2d 73, 23 C.C.P.A., Patents, 752, for the reasons stated above they are not entitled to much weight. However, a consideration of all the evidence and its cumulative effect justifies the conclusion of probable and actual confusion of the two marks.

■ I think that the plaintiff has proved a valid technical trade-mark and infringement of it by the defendants. However, it does not appear that the infringement by defendants was either wilful or intentional, and hence plaintiff's claim based upon unfair competition, is dismissed. The defendants retained expert

trade-mark counsel to make a search and upon his informing them that "Starlight" was not registered and, acting under his advice, adopted the trade-mark "Starlight." From July 1944 to January 1946 the defendants sold brassieres and during this same period plaintiff neither made nor sold brassieres. There is no proof that the sales made by the defendants after January 1946 caused any direct or indirect injury to the plaintiff's business or good will, or that such sales were not made on the merits of defendants' product and defendants' reputation without any reference to the plaintiff.

Under the circumstances, I am of the opinion that it would be inequitable to award an accounting. See Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386; Triangle Publications, Inc. v. Joseph D. Rohrlich, supra.

The defendants' counterclaims are dismissed in their entirety, and the plaintiff may have a decree enjoining defendants from use of the word "Starlight" as a trade-mark in the sale of brassieres.